Filed 12/31/24  P. v. Magana CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B330426 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA164867) |
| v. | |
| ERICK MAGANA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gustavo Sztraicher, Judge.   Affirmed.

Richard Lennon and Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

# I. INTRODUCTION

In 1998, a jury convicted defendant Erick Magana of second degree murder (Pen. Code, § 187[1]) and found true the allegation that a principal was armed with a handgun during the commission of the murder (§ 12022, subd. (a)(1)). Defendant's conviction was affirmed on appeal. (*People v. Magana* (Mar. 2, 2005, B127841) [nonpub. opn.] (*Magana I*).) In 2019, defendant filed a petition for resentencing pursuant to section 1170.95 (now section 1172.6—further references will be to section 1172.6). The trial court denied the petition and a prior panel of this division affirmed the court's order. (*People v. Magana* (Aug. 18, 2021, B303377) [nonpub. opn.] (*Magana II*).) In 2022, defendant filed a second petition for resentencing pursuant to section 1172.6. The court again denied the petition. Defendant appeals and we affirm.

# II. BACKGROUND

## A. *Factual Background*

The following factual background is taken from the opinion in *Magana II* which was based on the factual background as stated in *Magana I* supplemented by the panel's review of the trial record:

"'Connie Lopez had been riding with her ex-husband in his van at approximately 3:30 or 3:45 p.m. on September 7, 1994. Their four children were also in the van. When stopped at a street light in front of Hollywood High School, Ms. Lopez saw four

---

[1]     All further statutory references are to the Penal Code.

young men, including defendant, in a blue Camaro automobile stopped in front of them. The young men were speaking in loud voices to some young women seated on a bus bench. Ms. Lopez described the teenaged young men as saying "bad things" to the women on the bus bench. Roland Ruiz, the victim, was standing on a grassy area behind the young women on the bus bench. Ms. Lopez testified, "[T]he driver come out and then the passenger, and then the other two followed them." The four young men got out of the Camaro and walked up to Mr. Ruiz, all the while gesturing with their hands. The driver was gesturing with his hands. More than one of the other young men were gesturing with their hands. At trial, Ms. Lopez testified at first that the front seat passenger was not gesturing with his hands because he was holding a gun. (Ms. Lopez told a detective the day after the shooting that the front seat passenger with the gun in fact made hand gestures. However, that fact was not reflected in the detective's report.)[2] Three of the young men walked in front of the armed youngsters [*sic*] as they walked towards Mr. Ruiz. The driver then punched Mr. Ruiz. The three young men were "very close" to Mr. Ruiz when the fatal shot was fired. Before being fatally shot, Mr. Ruiz was unarmed and did not have anything in his hands. The young man with the gun began pointing it at "everybody" including Ms. Lopez. Ms. Lopez screamed at the armed youngster when he pointed the gun at her. Ms. Lopez testified, "I thought he was going to shoot me." The four young men then ran together northbound on Highland. Ms. Lopez later identified defendant from a photographic lineup as one of the individuals involved in the shooting. Ms. Lopez also identified

"2      Ms. Lopez also told the detective that the gun was chrome.

3

photographs of the blue Camaro in which the young men had been riding.

"'Testimony was also provided by Irene Ruiz and a friend, Yajaira Arias. They drove to the school in order to pick up Ms. Ruiz's brother, Mr. Ruiz, the victim. Ms. Ruiz, Ms. Arias, and Mr. Ruiz were members of a local gang. While at the corner of Selma and Highland Streets, Ms. Ruiz saw four young men running together toward her truck from the direction of the high school. The four young men were running northbound on Highland. As the four young men approached Ms. Ruiz's car, she testified, "They asked me for a ride." Ms. Ruiz asked where they were from. When one of the young men responded with the name of a different gang, Ms. Arias responded, "Fuck [that gang]." The young men responded, "Fuck [your gang]."[3] Ms. Arias and Ms. Ruiz then started swearing at the four young men. In turn, the four young men were swearing at Ms. Arias and Ms. Ruiz. One of the four young men pointed a gun at Ms. Ruiz and Ms. Arias and said "they" wanted to shoot them.[4] One of the four young men attempted to climb into the pickup truck. However, Ms. Ruiz drove away, turned the truck around, and attempted to run the four young men down. Ms. Ruiz drove to a liquor store to locate

---

"3      Ms. Arias, Ms. Ruiz, and the victim, Mr. Ruiz, were members of the 18th Street gang. Defendant was a member of the Mara Salvatrucha gang. Jose Andres, who was identified by Ms. Arias as one of the men who ran away from the shooting and whose fingerprints were recovered from the Camaro, was also a member of the Mara Salvatrucha gang. The interaction between defendant, Mr. Andres, and the other young men with Ms. Ruiz and Ms. Arias occurred in 18th Street gang territory.

"4      Ms. Ruiz testified that the gun was black.

4

members of her gang.  Thereafter, four men who were members of Ms. Ruiz's gang got into her truck.  Ms. Ruiz drove around looking for the young men who had threatened her with a gun, but was unable to find them.  Ms. Ruiz then drove to Hollywood High School to get her brother.  Ms. Ruiz saw an ambulance at the school.  Ms. Ruiz saw her brother, Mr. Ruiz, on the ground.  She later learned that her brother had been shot.  Ms. Ruiz identified two individuals from a photographic lineup as two of the four individuals who asked for a ride and then pulled a gun.  At trial, Ms. Ruiz pointed out defendant as one of the young men she saw running on September 7, 1994, but further stated, "I don't remember because it's been a long time."

"'Ms. Arias identified defendant's photograph from a photographic lineup, stating:  '"Photo 3 is the person that I saw running away from the scene of the shooting.  I saw him holding his left hand near his waistband.  I thought he had a gun."'  Ms. Arias identified defendant a second time at trial as one of the young men she saw running on the day of the shooting.

"'Los Angeles Police Officer Edward Sakowski responded to a radio call regarding a shooting at Hollywood High School.  As he arrived at the school, he noticed a crowd of approximately 100 to 200 students on the grass and [one] person on the ground.  Two school employees were administering cardio pulmonary resuscitation to the victim, Mr. Ruiz.  Officer Sakowski requested assistance and [an] ambulance.  Some students pointed out a blue Camaro automobile on Highland Avenue that had been involved in the shooting.  The ignition on the car had been "punched."  Officer Sakowski learned that those involved in the shooting ran northbound on Highland Avenue.  An ambulance took Mr. Ruiz to

the hospital where he died as the result of a single gunshot wound to the chest.

"'Dionisio Grafil, a forensic print specialist with the Los Angeles Police Department recovered approximately 35 latent fingerprints from the blue Camaro. Defendant's fingerprints were found to match those of some taken from the outside driver's door.[5] Officer Gustavo Chacon was a gang investigator at the time of the shooting. Officer Chacon was familiar with the gangs in the area of Hollywood High School. Officer Chacon knew Mr. Ruiz as a member of a local gang. Officer Chacon identified defendant as a member of a rival gang in the area. Officer Chacon had previously spoken with defendant. Officer Chacon testified defendant had tattoos consistent with those worn by the local gang. Officer Chacon demonstrated the gang signs for the members of the rival gang, wherein they gestured with their hands to depict the letters of the gang." (*[Magana I],* *supra,* B127841.)" (*Magana II, supra,* B303377.)

## B. *Procedural Background*

### 1. First Resentencing Petition

As we explained in *Magana II, supra*, B303377:

"On January 7, 2019, defendant petitioned for resentencing pursuant to section [1172.6]. Defendant asserted in a form petition that: '[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a

---

"5      Mr. Andres's fingerprints matched those taken from the inside passenger-side-front window, the outside passenger-side trunk, and the outside driver's-side-rear panel, near the trunk.

6

theory of . . . murder under the natural and probable consequences doctrine'; '[a]t trial, [he] was convicted of . . . 2nd degree murder pursuant to . . . the natural and probable consequences doctrine'; and '[he] could not now be convicted of murder because of changes to [section] 188, effective January 1, 2019.'

"[¶] . . . [¶]

"[After briefing by the parties,] [t]he trial court conducted a[n order to show cause] hearing on August 27, 2019, September 24, 2019, and October 23, 2019. Neither the [Los Angeles County] District Attorney [(District Attorney)] nor defendant submitted additional evidence in connection with that hearing. Instead, both parties relied on the record of conviction to argue their respective positions.

"On November 4, 2019, the trial court issued a minute order denying the petition. As an initial matter, the court observed that it was the prosecution's burden to prove, beyond a reasonable doubt, that defendant was ineligible for resentencing in this case because he 'could be found guilty under the law as it currently exists.' Based on its review of the evidence and argument of counsel, the court concluded that defendant was not eligible for resentencing because he 'acted with malice when he directly aided and abetted the murder of the victim.'

"The trial court then explained: 'This case involved a calculated decision by two documented known gang members, [defendant] and Mr. Andres, plus two other young male Hispanics, to go on a mission into rival gang territory in a stolen car. They entered into this rival territory with at least one loaded firearm. There was evidence that there were two guns, a chrome gun used to kill the victim and a black gun used by

7

[defendant] to threaten witnesses after the murder. They drove in and stopped at the [h]igh [s]chool right at the time when school commonly was ending which exposed many potential targets. As argued by the prosecutor, a reasonable inference from the evidence was that [defendant] was the driver of the car based on his print on the driver's door and Mr. Andres was the front passenger based on his prints on the passenger side door and a tentative photo lineup identification. [Defendant] was the first one to get out and was followed by Mr. Andres, who already had the loaded chrome firearm out as he exited the car. The driver [(defendant)] immediately started confronting the victim by making hand gestures that were consistent with flashing his gang signs. The victim didn't have anything in his hand nor did he say anything to the group to provoke them. The four approached the victim in such a calculated manner as to conceal the fact one of their number was armed with a firearm, the driver [(defendant)] and two others in front and the front passenger (Mr. Andres) slightly behind. The driver [(defendant)] diverted the victim's attention by punching him in the face causing him to fall to the ground which gave the front passenger (Mr. Andres) the opportunity to immediately [shoot] the victim while he was on the ground.[ ] There was no fight, no argument, just an execution.

"'The four fled the area as Mr. Andres repeatedly pointed the gun at others who were nearby. When they came across Ms. Ruiz and [Ms. Arias], [defendant] continued to claim his gang in a hostile manner. According to Ms. Ruiz, he had his own black gun which he pointed at the young women and stated "they should shoot them too."'"

Defendant appealed the trial court's order denying his resentencing petition. A prior panel of this division affirmed the

court's order, holding that substantial evidence supported a finding that defendant acted as an aider and abettor and with the intent to kill Mr. Ruiz. (*Magana II, supra,* B303377.) The panel explained, "Defendant drove Mr. Andres, a fellow gang member, and two others in a stolen car into rival gang territory. Defendant and the others then approached Mr. Ruiz, a rival gang member, with defendant walking in front of the shooter, thereby concealing the shooter's gun from Mr. Ruiz's view. Defendant flashed gang signs at Mr. Ruiz and punched him immediately before the shooter shot and killed him. Defendant and the others fled the scene together and continued to demonstrate their gang allegiance by swearing at rival gang members Ms. Ruiz and Ms. Arias. This evidence supports a finding that defendant shared the shooter's intent to kill Mr. Ruiz and aided and abetted the shooting. [Citation.] A direct aider and abettor is liable for murder notwithstanding changes made by Senate Bill [No.] 1437 and thus is ineligible for relief under section [1172.6]. [Citation.]" (*Ibid.*)

###### 2.    Second Resentencing Petition

On February 14, 2022, defendant filed a second petition for resentencing pursuant to section 1172.6. Defendant alleged that an information had been filed against him allowing the prosecution to proceed under the natural and probable consequences doctrine; he was convicted of second degree murder; he was not the actual shooter and it was never contended he was the actual shooter; the jury was instructed on direct aiding and abetting and on the natural and probable consequence theory of liability; and he could not now be convicted of second degree

9

murder based on the changes to sections 188 and 189, effective January 1, 2019, and amended effective January 1, 2022.

Defendant argued the trial court incorrectly applied a substantial evidence review when it denied his first petition—finding the jury *could* have found him guilty on an aiding and abetting theory or as the actual shooter—and subsequent amendments to section 1172.6 made clear that a finding there was substantial evidence to support a murder conviction is insufficient to prove beyond a reasonable doubt a defendant is ineligible for resentencing.

On October 31, 2022, the District Attorney filed an opposition to plaintiff's second resentencing petition arguing the second resentencing petition was a successive petition barred by the doctrine of collateral estoppel. Defendant filed a reply in support of his second resentencing petition.[6]

On March 17, 2023, the trial court denied defendant's second resentencing petition without issuing an order to show cause. It ruled defendant was ineligible for resentencing as a matter of law because the court was bound by the prior panel of this division's opinion in *Magana II* which was law of the case and defendant's second petition was procedurally barred by the collateral estoppel doctrine.

## III.  DISCUSSION

Defendant contends the trial court erred in summarily denying his second resentencing petition. He argues that neither the collateral estoppel doctrine nor the law of the case doctrine bars his second resentencing petition because there was a

---

[6]    The reply is not a part of the record on appeal.

10

significant change in the law after his first resentencing petition—amendments to section 1172.6 clarified that a trial court's finding that there was substantial evidence to support a murder conviction is insufficient to prove, beyond a reasonable doubt, that a petitioner is ineligible for resentencing. The court did not err.

A.    *Legal Principles*

1.    <u>Section 1172.6</u>

Under section 1172.6, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to

11

section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record.  [Citation.]  And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)  If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)

At an evidentiary hearing under section 1172.6, subdivision (d)(3), "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

We review de novo a trial court's determination of whether the defendant has made a prima facie showing.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

### 2.    Collateral Estoppel Doctrine

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.  [Citation.]  Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily

12

decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. omitted.) "A well-settled equitable exception to the general rule of collateral estoppel "'holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." [Citation.]'" (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1005.)

### 3. Law of the Case Doctrine

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal. [Citations.] . . . [W]e do not apply [the doctrine] when an intervening decision has altered or clarified the controlling rules of law . . . . [Citations.]" (*People v. Jurado* (2006) 38 Cal.4th 72, 94.)

### B. *Analysis*

At the time the trial court heard defendant's first resentencing petition, there was a split of authority as to whether a trial court acts as an independent factfinder or applies the substantial evidence test at a section 1172.6, subdivision (d) hearing. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745

13

(*Garrison*).)  The Supreme Court's November 23, 2021, order to vacate an opinion—*People v. Duke* (2020) 55 Cal.App.5th 113—and the Legislature's amendments to section 1172.6 resolved the split and require trial courts, acting as independent factfinders, to determine beyond a reasonable doubt whether defendants are guilty of murder under a valid theory of murder.  (*Garrison, supra*, 73 Cal.App.5th at p. 745.)

The resolution of that split of authority was a qualifying change in the law for purposes of the collateral estoppel and law of the case doctrines.  That change, however, had no bearing on the denial of defendant's second resentencing petition because in denying defendant's first resentencing petition, the trial court acted as an independent fact finder and applied the beyond a reasonable doubt standard.

In its November 4, 2019, order denying defendant's first resentencing petition, the trial court observed, "The prosecution's burden is to show that a viable theory of conviction existed beyond a reasonable doubt."  The court then found, based on its review of the evidence and arguments of counsel, that defendant "acted with malice when he directly aided and abetted the murder of the victim."  That is, after reviewing the evidence and acting as an independent fact finder, the court found the prosecution proved defendant's guilt beyond a reasonable doubt.  The court's subsequent statement that "[u]nder either reasonable interpretation of the evidence, based on the current law, petitioner *could* be convicted of murder either as a direct aider and abettor or an actual shooter" (italics added) reflects the court's conclusion as an independent fact finder that the prosecution proved defendant's guilt beyond a reasonable doubt under both theories of guilt, and does not show the court applied

14

a substantial evidence test.  Indeed, the court's statement tracks the language of the statute as it existed in November 2019 (§ 1170.95, subd. (a)(3) ["The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019"]), which is similar to the current version of the statute (§ 1172.6, subd. (a)(3) ["The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019"].)

## IV.   DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.